**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **In re:**<br>**JPK Newco LLC,**<br>**Debtor.** | **Bankr. Case No. 25-00200-ELG**<br>**Chapter 11** |
| **JPK Newco LLC, *et al.*,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**Developer RE1 LLC & 423 Kennedy St Holdings LLC,**<br>**Defendants.** | **Bankr. Adv. Pro. 25-10015-ELG**<br><br>**Case No. 1:25-mc-00161-JEB** |
| **Developer RE1 LLC & 423 Kennedy St Holdings LLC,**<br>**Plaintiffs,**<br><br>**v.**<br><br>**DP Capital LLC, *et al.*,**<br>**Defendants.** | **Bankr. Adv. Pro. 25-10037-ELG**<br><br>**Case No. 1:25-mc-00160-JEB** |

**RECOMMENDATION TO DISTRICT COURT PURSUANT TO**
**DISTRICT COURT LOCAL BANKRUPTCY RULE 5011-8(b)**

This Recommendation comes upon a request under District Court Local Bankruptcy Rule 5011-8(b) for a recommendation regarding the two separate, but related *Motions for Withdrawal of the Reference and Statement of Points and Authorities in Support* (the "Withdrawal Motions") filed by Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy," and together with Developer RE1, the "Movants") in Adversary Proceedings 25-10015-ELG (the "JPK Adversary") and 25-10037-ELG (the "Movant Adversary," and together with the JPK Adversary, the "Adversary Proceedings"). Adv. No. 25-10015-ELG, ECF No. 26 & Adv. No.

25-10037, ECF No. 11. Specifically, the District Court requested a recommendation from the Bankruptcy Court on (1) whether the Adversary Proceedings are core proceedings; (2) if core, whether the Bankruptcy Court can constitutionally hear and determine the issues therein; and (3) whether, in the opinion of the Bankruptcy Court, withdrawal of the reference is warranted in either or both of the Adversary Proceedings.

The Adversary Proceedings arise out of the chapter 11 case filed by JPK Newco, LLC (the "Debtor"). *In re JPK NewCo, LLC,* Bankr. Case No. 25-00200-ELG, ECF No. 1 (Bankr. D.D.C. May 27, 2025) [hereinafter *JPK II*]. However, the issues between the parties in the Adversary Proceedings predate both *JPK II* and the Debtor's prior chapter 11 case filing on July 23, 2024. *In re JPK NewCo LLC,* Bankr. Case No. 24-00262-ELG, ECF No. 1 (Bankr. D.D.C. July 23, 2024) [hereinafter *JPK I*]. The Debtor is a special purpose entity formed to own and hold to junior promissory notes (the "Notes") and corresponding junior liens (the "Liens") on real property commonly known as 419-423 Kennedy St. NW and 55501 1st St. NW in Washington, DC (collectively, the "Properties"). 423 Kennedy is the owner and obligor of the former property and Developer RE1 is the owner and obligor on the latter. Both Properties are partially developed, but development is stalled.

The litigation between the Movants and the Debtor relates directly to the lending relationship, the alleged default(s) of the Movants, and the Debtor's attempts to collect on the Notes and enforce the terms of the Liens. Litigation between the Movants and the Debtor and/or the Debtor's predecessor in interest in the Notes and Liens dates as far back as 2022 in the Superior Court of the District of Columbia (the "Consolidated Superior Court Case"). *Developer RE1, LLC v. DP Capital LLC*, No. 2022-CAB-005935 (D.C. Sup. Ct. Sep. 19, 2025) (consolidated with *423 Kennedy St Holdings, LLC v. DP Capital LLC*, 2023-CAB-004260 (D.C. Sup. Ct. May 27, 2025)).

The Consolidated Superior Court Case was removed to the Bankruptcy Court in *JPK II* and designated as the Movant Adversary. On August 5, 2025, both Developer RE1 and 423 Kennedy filed proofs of claim for the "unliquidated and estimated" amount of $3,000,000 based upon "facts known to date in the [Consolidated Superior Court Case]". *See* Proof of Claim of 423 Kennedy, *JPK II*; Proof of Claim of Developer RE1, *JPK II*.

Despite being filed in May 2025, the JPK Adversary remains in its nascent stages. Further, while there was significant pre-bankruptcy litigation in the Movant Adversary, little progress has been made since removal. The lack of activity is the result of a consensual stay of proceedings and referral to a judicial mediator for resolution in October 2025. The parties notified the District Court that the mediation was unsuccessful in April 2026, and the District Court's request for recommendation was entered approximately one month thereafter. The parties did not notify the Bankruptcy Court in the Adversary Proceedings that the mediation was unsuccessful until June 2026. Joint Mediation Report, JPK Adversary, ECF No. 36; Joint Mediation Report, Movant Adversary, ECF No. 25.

In order to fully address the request of the District Court, a review of the causes of action in each of the Adversary Proceedings is necessary. As more fully detailed herein, the Adversary Proceedings are inextricably intertwined and the analysis as to the JPK Adversary necessarily applies to a large portion of the Movant Adversary. Therefore, the Bankruptcy Court will issue this Recommendation in both cases.

## I. Background

### *A. The Movant Adversary*

On December 16, 2022, Developer RE1 filed a *Complaint* in the District of Columbia Superior Court against DP Capital LLC d/b/a Washington Capital Partners, the WCP Fund I LLC,

Daniel Huertas, and Russell Drazin. On July 13, 2023, 423 Kennedy filed a *Complaint* against DP Capital LLC d/b/a Washington Capital Partners, the WCP Fund I LLC, Daniel Huertas, Russell Drazin and SF NU, LLC. The first major development in the two Superior Court cases occurred on July 24, 2023, when the Superior Court entered orders in each case granting a temporary restraining order without requiring a bond, enjoining the defendants therein from foreclosing on the Properties until either further order of the court or the conclusion of the litigation, with the intent to consolidate a preliminary injunction hearing with a trial on the merits. Trial was initially set for September 2024 but was canceled upon the first removal to the Bankruptcy Court described below. The July 2023 temporary restraining order remains in effect to date as to each Property. On June 11, 2024, the Superior Court formally consolidated the two proceedings into the Consolidated Superior Court Case under the December 2022 case number. Copies of each of the pleadings referenced herein is part of the over 5000-page record transmitted to the Bankruptcy Court on removal and docketed at Movant Adversary, ECF No. 1.

The procedural history of the Movant Adversary is more complex than most cases. It was originally removed to the Bankruptcy Court because it related to an involuntary chapter 7 case. *Developer RE1 LLC v. WCP Fund I LLC*, No. 24-10023-ELG (Bankr. D.D.C. July 4, 2024) [hereinafter the Originally Removed Case], removed in *In re Paret*, No. 23-00217-ELG (Bankr. D.D.C. Aug. 4, 2023). An initial motion to remand was denied in February 2025, after which the parties continued to litigate, including by filing a *Third Amended Complaint* on March 5, 2025, captioned with both consolidated Superior Court case names. Am. Compl., Originally Removed Case, ECF No. 40. Shortly thereafter, the Movants filed a renewed motion for remand and a motion seeking leave to file a fourth amended complaint. Mot. for Remand, Originally Removed Case, ECF No. 46 [hereinafter the Renewed Remand Motion] & Mot. for Leave to File Fourth Am.

Compl., Originally Removed Case, ECF No. 57. While the Renewed Remand Motion was pending, the Debtor filed a motion to dismiss or, in the alternative, for summary judgment on the *Third Amended Complaint* (the "Pending Motion to Dismiss"). Mot. To Dismiss Adversary Proceeding or, in the Alternative, Mot. For Summ. J., Originally Removed Case, ECF No. 44. On May 12, 2025, based upon the dismissal of *JPK I*, the Bankruptcy Court abstained from hearing the Movant Adversary and returned the case to the Superior Court. Order Granting Renewed Mot. to Remand, Originally Removed Case, ECF No. 64. As part of the abstention order, the Bankruptcy Court specifically took no action on the Pending Motion to Dismiss.

There was no progress on the Movant Adversary while on remand. Shortly after the remand, the Debtor docketed a notice of bankruptcy filing and on June 18, 2025 the Superior Court entered an order staying the proceeding until the conclusion of the Debtor's chapter 11 case. Order, Consolidated Superior Court Case (June 18, 2025). Less than three months later, the case was re-removed by the Debtor pursuant to 28 U.S.C. §§ 1334 and 1452. Notice of Removal, Movant Adversary, ECF No. 1. The case was automatically referred to and docketed in the Bankruptcy Court pursuant to DCt.LBR 5011-1. Thus, upon re-removal, the Pending Motion to Dismiss returned to the Bankruptcy Court. No action was taken by the Bankruptcy Court thereon or on the Movants' motion for leave to file a fourth amended complaint because the Movants filed the instant motion seeking withdrawal of the reference and the parties consented to a stay for judicial mediation. Order Appointing Judicial Mediator, JPK Adversary, ECF No. 33. As of the termination of the agreed stay for mediation, the only motion set for hearing before the Bankruptcy Court was a motion by the Debtor seeking dissolution of the original July 2023 temporary restraining order issued by the Superior Court. Mot. to Dissolve Inj., Movant Adversary, ECF No. 20. No other motions are set for hearing.

The Third Amended Complaint consists of seven counts, all arising out of the loan transactions and resulting events between the Movants and defendants related to the Properties. The Third Amended Complaint contains 217 separate factual allegations which the Bankruptcy Court does not endeavor to thoroughly summarize herein. In general, the Movants' allegations are not limited to a breach of the lending agreement, but instead seek to establish that certain defendants are predatory lenders (p. 29, 31) who unethically and improperly defaulted the Movants on their loans (p. 18), created cover stories (p. 21, 24), and developed a corrupt plan to foreclose on the Movants including by sabotaging a possible refinancing (p. 10), all after inappropriately failing to pay construction draws to create defaults (p. 10). As such, the Movants seek recovery as follows: Count I: Tortious Interference of Business Relations against WCP, DP Capital, and Mr. Huertas; Count II: Breach of Duty of Good Faith and Fair Dealing against WCP, DP Capital, SF NU, and the Debtor; Count III: Declaratory Judgment as to certain facts against WCP, SF NU, and the Debtor; Count IV: Permanent Injunctive Relief against foreclosure until after trial against all defendants; Count V: Breach of Fiduciary Duty as to Mr. Drazin; Count VI: Declaratory Judgment that Mr. Drazin cannot serve as trustee and invalidating the foreclosure notices against all defendants; and Count VII: Set Aside Fraudulent Transfers against all defendants other than Mr. Drazin. The Debtor is therefore a defendant in five out of the seven counts, each of which seeks either an award against the Debtor of a monetary judgment, injunctive relief, a loss of the Debtor's Lien, and/or attorneys' fees and costs. (The Third Amended Complaint lists in its opening Shaheen Sariri as a defendant, but Mr. Sariri is not listed in the caption thereof. A summons was issued for Mr. Sariri, but it does not appear he has been served with the action nor has he appeared. To the extent Mr. Sariri is a valid defendant, he is specifically excluded from Counts IV and VI.). Count I is brought solely against companies related to the Debtor and Count V is brought solely against

the Debtor's attorney and substitute trustee on the Debtor's Lien.

*B. The JPK Adversary*

Unlike the Movant Adversary, the status of the JPK Adversary is streamlined and straightforward. On May 28, 2025, the Debtor filed a *Complaint* in the Bankruptcy Court asserting eight causes of action against the Movants: Count I: Turnover (11 U.S.C. § 542(b)) against Developer RE1; Count II: Turnover (11 U.S.C. § 542(b)) against 423 Kennedy; Count III: Declaratory Relief as to Trustee's Duties (28 U.S.C. § 2201); Count IV: Declaratory Relief as to Trustee's Service (28 U.S.C. § 2201); Count V: Declaratory Relief as to Foreclosure (28 U.S.C. § 2201); Count VI: Declaratory Relief as to Defaults (28 U.S.C.§ 2201); Count VII Declaratory Relief as to Fraudulent Conveyance (28 U.S.C § 2201); and Count VIII Declaratory Relief as to Validity of Loan Documents (28 U.S.C. § 2201). Compl., JPK Adversary, ECF No. 1. On June 27, 2025, the Movants filed a motion seeking to stay the proceedings until the conclusion of the motion to dismiss *JPK II*. On August 20, 2025, the Movants sought to either dismiss the proceeding or have the Bankruptcy Court abstain from hearing the JPK Adversary under 11 U.S.C. § 1334. On September 4, 2025, the Bankruptcy Court, finding that the matter was core and that permissive abstention was not appropriate, denied the motion from the bench. Order Den. Mot. for Remand and Abstention, JPK Adversary, ECF No. 28. Six days after the oral ruling, the Movants filed an *Answer* and a *Partial Motion to Dismiss*, seeking dismissal of Counts II–VIII. Answer to Compl., JPK Adversary, ECF No. 21; Mot. to Dismiss Adversary Proceeding, JPK Adversary, ECF No. 20. On October 6, 2025, prior to a hearing on the Partial Motion to Dismiss, the Movants filed the *Motion for Withdrawal of Reference* and on October 31, 2025, the matter was stayed for judicial mediation. Order Appointing Judicial Mediator, JPK Adversary, ECF No. 33. While the stay has been lifted, a hearing on the Partial Motion to Dismiss has not been rescheduled.

*C. The Adversary Proceedings are Premised on the Same Nucleus of Core Issues*

Although the Adversary Proceedings currently remain separate cases, all parties have conceded that they are premised on the exact same nucleus of core facts. The parties disagree, vehemently, on whether the JPK Adversary represents independent causes of action on behalf of the estate or if such claims are brought simply to cut off the rights of the Movants in the Movant Adversary. It is clear to the Bankruptcy Court that the matters will need either to be consolidated or to be heard concurrently to avoid questions of preclusion since factual findings and legal determinations in one adversary will necessarily impact the rights and claims in the other. The substantial overlap is considered in the Bankruptcy Court's recommendation below.

## II. Recommendation

Pursuant to 28 U.S.C. § 157 and DCt.LBR 5011-1(a), "all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" are referred to the Bankruptcy Court. The referral of cases to the Bankruptcy Court includes any civil action removed on the basis that the District Court has jurisdiction over the civil action under 28 U.S.C. § 1334 (Bankruptcy cases and proceedings). DCt.LBR 5011-1(b). Federal jurisdiction under 28 U.S.C. § 1334 is defined as "all civil proceedings arising under title 11, or arising in or related to cases under title 11." A district court may withdraw the reference, in whole or in part, of a case referred to a bankruptcy court "for cause shown." 28 U.S.C. § 157(d). The Movants assert three forms of cause for removal: (i) that the adversary proceedings are not core (as that is defined by 28 U.S.C. § 157); (ii) judicial economy; and (iii) they have claimed a right to jury trial. The Debtor disputes each of these grounds and additionally argues that the Movants' motions were untimely under the District Court Local Rules. Pursuant to DCt.LBR 5011-8(b), the District Court has asked the Bankruptcy Court to address the following in this Recommendation: (1) a determination, pursuant to 28 U.S.C. § 157(b)(3), whether the proceeding, for which withdrawal of the reference

is sought, is a core proceeding; (2) views as to whether the proceeding, if a core proceeding, is one that the bankruptcy judge may constitutionally hear and determine; and (3) a recommendation regarding whether withdrawal of the reference (or granting of the related motion) is warranted. Minute Order, *In re JPK Newco LLC*, No. 1:25-mc-00160-JEB (May 12, 2026). For the reasons stated herein, the Bankruptcy Court recommends against withdrawing the reference in either of the Adversary Proceedings.

*A. Whether the Adversary Proceedings are Core Proceedings*

Upon referral from the district court, bankruptcy courts may hear and determine all proceedings arising in, arising under, or related to a case under title 11. *See* 28 U.S.C. §§ 157(a), 157(b)(1); *see also Capitol Hill Grp. v. DCA Capitol Hill LTAC, LLC (In re Specialty Hosp.)*, 558 B.R. 471, 472 (D.D.C. 2016) (a bankruptcy court "may hear and determine and may enter appropriate orders and judgments in all core proceedings arising under bankruptcy law or arising in a bankruptcy case subject to the district court's review . . . .") (citation modified). Claims arising in or arising under title 11 are considered core proceedings. 28 U.S.C. § 157(b)(1). Section 157(b)(2) of title 11 provides a non-exhaustive list of matters that constitute core proceedings, including as relevant to the Adversary Proceedings, § 157(b)(2)(B) – allowance or disallowance of claims against the estate; § 157(b)(2)(C) – counterclaims by the estate against persons filing claims against the estate; § 157(b)(2)(E) – orders to turn over property of the estate; § 157(b)(2)(H) – proceedings to determine, avoid, or recover fraudulent conveyances; § 157(b)(2)(K) – determination of the validity, extent, or priority of liens; and § 157(b)(2)(O) – other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. The determination as to whether a matter is core shall not be made solely on the basis that its resolution may be affected by state law. 28 U.S.C. § 157(b)(3).

Claims "arising under" bankruptcy law are those that invoke a substantive right created by federal bankruptcy law. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); *see also In re U.S. Off. Prods. Co. Sec. Litig.*, 313 B.R. 73, 79 (D.D.C. 2004) ("[Arising under jurisdiction lies if] the claim is made pursuant to a provision of title 11."). "Arising under" jurisdiction involves claims "necessary to administer a bankruptcy estate" as they are "those that are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *BGC Partners, Inc. v. Avison Young (Can.) Inc.*, 115 F. Supp. 3d 119, 123 (D.D.C. 2015) (quoting *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 489 (D.C. Cir. 2009)).

*i. The JPK Adversary is Core*

The JPK Adversary involves core claims, as defined by one or more of the subsections of 28 U.S.C. § 157(b). As an initial matter, the first two counts of the JPK Adversary are those for turnover under Bankruptcy Code § 542, which cause of action exists only as a result of the pendency of the Debtor's chapter 11 case, arises under title 11, and is clearly core. Each of the remaining causes of action seeks a declaratory judgment essentially inapposite to the relief sought by all or part of the Movant Adversary. A determination on each of the remaining counts in the JPK Adversary will require a determination of various core matters including the validity, extent, and priority of the Debtor's liens in the Properties (§ 157(b)(2)(K)) and the allowability, validity, and/or amount of the claim of the Movants in the Debtor's estate (§ 157(b)(2)(B)). Count VII further involves the core question of fraudulent conveyances (§ 157(b)(2)(H)). Finally, each of the causes of action implicates the liquidation of assets of the Debtor's estate (specifically the Notes) (§ 157(b)(2)(A)) and the adjustment of the creditor-debtor relationship between the Debtor and the Movants (§ 157(b)(2)(O)). Thus, the JPK Adversary clearly involves core matters.

*ii. The Movant Adversary is Core*

As an initial matter, because the Movants incorporated all of their claims (Counts II, III, IV, VI, VII) (the "Movants' Debtor Counts") in the Movant Adversary into the proofs of claim filed against the Debtor, each count brought by the Movants against the Debtor is core because each relates to the allowance or disallowance of the claims filed against the Debtor's estate under 28 U.S.C. § 157(b)(2)(B). In addition, each of the Movants' Debtor Counts necessarily involves core determinations as to the validity and extent of liens under § 157(b)(2)(K) and proceedings affecting the administration and liquidation of assets of the estate (the Notes and Deeds of Trust) under § 157(b)(2)(A), and adjustment of the debtor-creditor relationship under § 157(b)(2)(O). The cause of action against Mr. Drazin (Count V) arises out of his actions as the trustee under the Deeds of Trust as part of the Debtor's collection efforts and is clearly related to the liquidation (i.e. collection) of the Notes under § 157(b)(2)(O). Count VII further is core as a claim for the avoidance of allegedly fraudulent transfers under § 157(b)(2)(H). Thus, Counts II-VII of the Movant Adversary are core under one or more subsections of § 157(b)(2).

Count I is pled against just WCP, DP Capital, and Mr. Huertas for tortious interference with business relations. The allegations rely heavily on an "improper demand" and lack of "valid justification" for default interest and penalties under the Notes as the basis of the failure of the Movants to obtain a refinancing, and thus necessarily involve the determination and analysis of the Debtor's claims against the Movants. Thus, Count I is core under § 157(b)(2)(B) (extent of the claims of the Movants against the Debtor), § (b)(2)(K) (validity and extent of Debtor's lien), and § (b)(2)(O) (other proceeding adjusting the debtor-creditor relationship). Therefore, even though the causes of action in the Movant Adversary proceeding are pled in state law, they are nonetheless core matters in the Debtor's chapter 11 case.

*B. The Bankruptcy Court Can Constitutionally Hear and Determine the Cases*

*i. Standard*

The question of constitutional versus statutorily core matters originates from the 2011 Supreme Court decision in *Stern v. Marshall*, 564 U.S. 462 (2011). 28 U.S.C. § 157 provides that bankruptcy courts have statutory authority to enter final orders in core matters; however, *Stern* established that Congress could not constitutionally grant bankruptcy courts the right to enter final judgment on certain categories of claims, even if such claims are statutorily core under 28 U.S.C. § 157. Designating a claim as a *Stern* claim does not alter the subject matter jurisdiction of the bankruptcy court; instead, it simply allocates the authority to enter a final judgment on such claim to an Article III court, absent consent of the parties. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015) (holding bankruptcy judges may adjudicate *Stern* claims with the parties' knowing and voluntary consent, including implied consent). Absent consent, bankruptcy courts may hear *Stern* claims and issue proposed findings and conclusions to the district court for entry of a final judgment or order after *de novo* review.

In *Stern*, the Supreme Court affirmed its prior decision in *Katchen v. Landy*, 382 U.S. 323 (1966) that where state law claims are included in a proof of claim filed by a creditor, the bankruptcy court has constitutional authority to determine the issues because they become "integral to the restructuring of the debtor-creditor relationship." *Stern*, 564 U.S. at 497 (internal citations omitted). Specifically, *Stern* defines the constitutionality question as whether the cause of action in question "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 499. Stated otherwise, "*Stern* only affects a bankruptcy court's constitutional authority to enter final judgments in a discrete subset of core proceedings that are based entirely on upon state law issues that will not necessarily be resolved

in restructuring debtor-creditor relations in connection with the administration of a bankruptcy case." *Shaia v. Taylor (In re Connelly)*, 476 B.R. 223, 232 (Bankr. E.D. Va. 2012) (citing cases). While the exact limits of *Stern* claims remain frequently considered by courts, there are two clear outer bounds set forth by the Supreme Court: (1) actions that stem from the bankruptcy itself or that necessarily will be resolved in the claims allowance process are constitutionally core, and (2) state tort claims that exist without regard to the bankruptcy proceeding are not. *Stern*, 564 U.S. at 499. Furthermore, to the extent that the constitutionality of the claims against the non-Debtor defendants be at issue in the Adversary Proceedings, each of those parties has consented to the Bankruptcy Court's entry of final orders. Thus, the only parties as to which constitutionality must be clearly established are the Movants, each of whom filed a proof of claim in the Debtor's chapter 11 case.

*ii. The JPK Adversary is Constitutionally Core*

The JPK Adversary is an action brought by the Debtor, under federal statutes, in the Bankruptcy Court for the adjudication or augmentation of its estate. The causes of action clearly relate to the establishment of the debtor-creditor relationship. Furthermore, the actions raised in the JPK Adversary must be resolved in order to liquidate the claims set forth by the Movants' proofs of claim in the Debtor's case. Thus, the JPK Adversary involves constitutionally core questions.

*iii. The Movant Adversary is Constitutionally Core*

Due to the Movants' incorporation of all elements of the Movant Adversary in their proofs of claim, such matters are also constitutionally core. Unlike *Stern*, the causes of action in the Movant Adversary are both central to the determination of the debtor-creditor relationship and are those that necessarily must be resolved as part of the claims allowance process. Despite being

based in state law, such matters are nevertheless constitutionally core. Unlike the state law tort counterclaim brought by the debtor in *Stern*, each of the causes of action in the Movant Adversary will necessarily be resolved in, or are dependent upon the resolution of, the claims allowance process in the Debtor's chapter 11 case. Thus, the Movant Adversary involves constitutionally core questions. (The Bankruptcy Court acknowledges that this analysis would be more difficult had the Movants not filed proofs of claim in the Debtors' case, but "he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." *Stern*, 564 U.S. at 496 (quoting *Katchen v. Landy*, 382 U.S. 323, 333 n.9 (1966)).

*C. Withdrawal of the Reference is Not Warranted*

In determining whether to withdraw the reference, a district court should consider "whether the proceedings are core proceedings, the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other factors." *Capitol Hill Grp. v. DCA Capitol Hill LTAC, LLC*, 558 B.R. at 472 (quoting *In re Ellipso, Inc.*, 477 B.R. 278, 281 (D.D.C. 2012)) (internal quotations omitted); *see also Sec. Farms v. Int'l Bhd. of Teamsters*, *Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing cases); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993) (collecting cases considering similar lists of factors). Other courts also consider whether a valid jury trial demand has been made. *See, e.g.*, *Orion Pictures Corp.*, 4 F.3d at 1101.

As an initial matter, the Bankruptcy Court notes that while the Movants have made a jury demand on their causes of action, the right to a jury trial remains a contested issue that will need to be determined in pre-trial motions pleading. Specifically, the Notes executed by the Movants

contain a waiver of jury trial clause. While the issue has been raised by the Debtor and co-defendants in their Motion to Dismiss and other pleadings, there has never been a determination on the merits of the right to jury trial on any of the Movants' claims. In addition, the Movants have pled a demand for jury trial in the JPK Adversary as to "all claims asserted . . . for which a jury trial is allowed under the law." Answer to Compl., JPK Adversary, ECF No. 21. Due to the stay of the proceedings, the Debtor has not responded to such demand nor has there been any determination if there is "any claim . . .for which a jury trial is allowed under law" in the case. *Id*. Thus, at best, this factor is neutral as to the Withdrawal Motions.

The Movants' basis for withdrawal of the reference lies primarily in the Movant Adversary. The request in the JPK Adversary is brought not necessarily due to an independent basis for removal, but instead as a result of the inextricably intertwined nature of the two actions. At the core of the matters are claims related to the debtor-creditor relationship of the Debtor, its affiliates, its principal, and its counsel. The causes of action and the Debtor's ability or inability to collect on the Notes are the crux of Debtor's reorganization, and resolution will be necessary to complete the claims allowance process. As addressed by the Bankruptcy Court in its initial denial of the Movants' motion to remand in the Originally Removed Case, there are no difficult or unsettled matters of state law, the matters are directly related to the Debtor's chapter 11 case, and the Debtor's bankruptcy case cannot be fully, or even partially, administered until the litigation is resolved. Each of these factors weighed against discretionary remand of the Originally Removed Case and the analysis is equally applicable to the requests to withdraw the reference in *JPK II*.

The Bankruptcy Court retains jurisdiction over the Debtor's reorganization, a process which remains pending despite the Movants' appeal of the Bankruptcy Court's denial of the Movants' motion to dismiss *JPK II*. Order Den. Mot. to Dismiss, *JPK II*, ECF No. 59, *appeal doc.*

Sep. 16, 2025. The issues in both cases must be considered as part of any effort by the Debtor to propose and confirm a plan of reorganization. Litigating the same issues in the Bankruptcy Court and the District Court simultaneously is the very example of judicial inefficiency, and yet if the reference is withdrawn as to the litigation, inefficiency would be the effect of such withdrawal. The Movants have taken every opportunity to seek to have the Movant Adversary heard by any court *other* than the Bankruptcy Court (to date, they have filed no less than four motions for abstention or remand in the various adversary proceedings), so much so they seek to remove the reference on the JPK Adversary at this time as well. Mot. for Withdrawal of Reference, JPK Adversary, ECF No. 26. The Debtor has consistently argued that having all matters in one court – the Bankruptcy Court – will result in both reduced costs to the parties and efficient administration of the Debtor's bankruptcy estate. Opp'n to Mots. to Withdraw the Reference, JPK Adversary, ECF No. 29. The Movants argue that the Debtor's second bankruptcy petition, and the JPK Adversary, are forms of forum shopping. However, as the Bankruptcy Court found in denying the motion to dismiss *JPK II*, the filing of the bankruptcy was not objectively futile as there is a chapter 11 plan on file and, until the extensive litigation, the Debtor was moving towards both resolution of the claims with and against the Movants and confirmation of a chapter 11 plan. Order Den. Mot. to Dismiss, *JPK II*, ECF No. 59. Finally, while the Bankruptcy Court is not privy to the details of the District Court's docket, the undersigned notes that the Bankruptcy Court is ready and able to proceed with adjudication of the Adversary Proceedings in a timely manner.

While withdrawal of the reference is ultimately an exercise of discretion of the District Court, based upon the fact that both Adversary Proceedings involve constitutionally core matters central to the administration of the Debtor's bankruptcy estate, the establishment of the debtor-creditor relationship between the Debtor and the Movants, and the allowance and of the claims

filed by the Movants in the Debtor's case, the Bankruptcy Court believes that withdrawing the reference is not warranted in either of the Adversary Proceedings.

## III. Conclusion

Therefore, for the reasons stated herein, the Bankruptcy Court recommends against withdrawing the reference in either of the Adversary Proceedings.

The document is hereby signed.

Date: August 25, 2026

Elizabeth L. Gunn
U.S. Bankruptcy Judge